STATE of Minnesota, Respondent,

v.

William George FORD, Appellant.

No. 47687.

Supreme Court of Minnesota.

Feb. 16, 1979.

C. Paul Jones, Public Defender, Kathy K. Rauenhorst, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson and Lee W. Barry, Assts., Minneapolis, for respondent.

ROGOSHESKE, Justice.

Defendant was found guilty by a district court jury of two counts of unlawful possession of heroin and was sentenced to a maximum term of 5 years in prison. The main

issues on this appeal from judgment are whether the court erred in refusing to order the prosecution to produce a government informant as a witness and whether the court properly handled a number of issues relating to the defense of entrapment and a claimed due-process violation. We affirm.

On August 24, 1976, an officer of the narcotics division of the Minneapolis Police Department obtained a warrant to search the apartment and persons of defendant and Patti Blomlie for heroin and related items. The affidavit accompanying the application for the warrant stated that the affiant had learned from Agent Kryger of the Federal Drug Enforcement Administration that one of his informants, who had previously provided information which had led to convictions, had been on the premises sometime within the previous 72 hours and had seen defendant and Blomlie in possession of the heroin.

After obtaining the warrant, Minneapolis police officers went to the apartment and executed the warrant. In defendant's pockets the officers found $345 in cash and an empty cigarette package containing a gram of powder wrapped in tinfoil. Laboratory analysis would later reveal that this powder contained heroin.

Defendant at first accused the police of bringing the powder with them, but then he changed his approach and told the officers that he would do anything, including become an informant, in order to avoid going to jail and having his parole revoked. The officers told defendant that they had to arrest him and take him to jail but that if he cooperated, they would put in a good word for him.

The officers then proceeded with the search and, as they were searching in a bedroom, defendant said that there was a ¼ ounce of heroin in a pill bottle in one of the drawers. Actually, the officers found two pill bottles containing a number of foil packs of heroin. The largest foil pack contained 6 grams of a hard powdered substance containing heroin. A second pack weighed 1½ grams. In addition there were four smaller packs. The state's chemist would later testify at trial under cross-examination by defense counsel that she believed all of the heroin, including that found in defendant's pockets, came from the same source.

Defense counsel opened the omnibus hearing by arguing that there was an illegal search and seizure and that this would become apparent if the court would order the state to produce as a witness one John Erickson, whom the defense could not locate. The defense, on the basis of testimony by defendant, contended specifically that Erickson was the unnamed informant referred to in the affidavit and that earlier on the 24th he had supplied defendant with the heroin found in defendant's pocket, telling defendant to hold it for a few hours as security for a debt which defendant had told him to repay later that afternoon. The defense argued that, this being so, suppression of all of the evidence was required, otherwise the police could simply give an informant a list of suspected drug users, have him deliver drugs to these people, and then use that as a basis for obtaining warrants to search for those drugs and other drugs. Defense counsel said that if the case went to trial he would be claiming entrapment as to the heroin found on defendant's person and lack of constructive possession as to the heroin in the drawer, but that for purposes of the pretrial motion he was arguing that suppression was required because of what he termed "outrageous governmental conduct."

The state, which at no time throughout these proceedings has either admitted or denied that Erickson was the informer or that he did the things alleged by the defendant, opposed the motion to suppress, saying that defendant was entitled to suppression only if he could show material false statements in the affidavit, and that he had not done this.

The court then hinted to defense counsel that he had not made a sufficient showing to require production of the informant, and so defense counsel called two more witnesses, Ms. Blomlie and her daughter, and recalled defendant. Chantel Blomlie, the

daughter, testified that sometime before defendant's arrest an "ugly black girl" knocked on the door and gave her a plastic bag with tinfoil over it, and she in turn gave it to her mother. Her mother testified that this happened the day before defendant's arrest and that the bag contained what she assumed was a chunk of heroin. She testified that she put it in the drawer by the bed and told defendant about it that night. She testified that they first thought the package came from a friend of defendant's who lived in Kansas City, but that later, after defendant's arrest, they decided that it must have come from someone connected with Erickson. At the conclusion of this testimony the defense rested and the court took the motion under advisement.

Thereafter the defense filed a new motion and a memorandum claiming that the prosecution should be dismissed or the evidence suppressed because of what defendant contended was entrapment as a matter of law or a due-process violation. In a memorandum submitted in support of this second motion defense counsel argued that under *State v. Grilli*, 304 Minn. 80, 230 N.W.2d 445 (1975), when a trial court decides the issue of entrapment as a matter of law, the court should not consider the matter of predisposition, only whether the police conduct was outrageous. He then argued that in view of the state's failure to produce any witnesses to refute defendant's testimony the court was obliged to believe defendant's testimony and hold that there was outrageous governmental conduct amounting to entrapment as a matter of law. He added that it wasn't enough to bar prosecution of defendant for the possession of the heroin in his pocket but that the court also had to suppress the other heroin found in the apartment because police should not be able to provide a person with drugs and then use that as a basis for obtaining a search warrant.

The state in its two reply memoranda opposed an order requiring it to produce the informant and reemphasized that it felt defendant had to show a material falsehood in order to void the search warrant. With respect to the entrapment claim the state disputed what it believed was defendant's contention that under *Grilli* a different test applies when the court decides the entrapment issue. The state submitted that by defendant's own testimony all Erickson had done was provide defendant with the opportunity to illegally possess marijuana and that this was not entrapment.

At a reopened omnibus hearing the court asked defense counsel whether or not he wanted to preserve the entrapment issue for trial. Defense counsel replied that he was submitting the entrapment issue to the court for decision and that he was aware that under *Grilli* once he submitted the issue to the court for decision as a matter of law, he could not raise it again at trial. However, counsel stated that if the court ruled that there was no entrapment, he intended to assert at trial that he had a right to have the jury decide the entrapment issue and that if *Grilli* denied him that right, then *Grilli* was unconstitutional. Counsel for the state responded that *Grilli* required a specific waiver on the record and that he believed that had been done by defense counsel.

The court then denied the defense motions, finding that there was no entrapment and concluding that the evidence did not support the contention that defendant's due-process rights had been violated. The court refused to order disclosure of the informant's identity, pointing out that defendant's contention was based upon his belief that Erickson was the informant and that defendant could have subpoenaed him.

While the entrapment issue was not presented to the jury, defendant did testify that Erickson gave him heroin on the morning of the 24th and that it was this heroin which was seized from his pocket. Defendant testified that Erickson gave this to him as security for a debt that he was going to pay back that afternoon. While defendant admitted that he suspected that the substance was heroin, he denied any intent to exercise dominion or control over it. He testified that while he had been convicted of selling heroin 6 or 7 years earlier, he had

quit using it, and he testified that as part of his parole he had to pass weekly urine tests designed to detect the presence of the drug. With respect to the heroin found in and seized from the drawer, defendant admitted knowing it was there but claimed he never touched it or exercised dominion or control over it. Counsel used the evidence that all the heroin was from the same batch to support his argument that Erickson was also the person behind the delivery to the apartment of the heroin found in the dresser.

In his closing statement the prosecutor argued that defendant's testimony was not true but that even if it was, the jury should find defendant guilty. Defense counsel argued that all the heroin came from Erickson and that it was a con job designed to set up defendant. He urged the jury to read the affidavit submitted as part of the application for the search warrant and reminded the jury of defendant's testimony that Erickson was the only one who had been in the apartment when he was present who could have seen heroin on his person and that he was the person who gave it to defendant.

The jury found defendant guilty of actual possession of the heroin found in his pocket and constructive possession of the heroin found in the drawer.

■ Decisions of the United States Supreme Court in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), and of this court in *State v. Grilli*, 304 Minn. 80, 230 N.W.2d 445 (1975), make it clear that entrapment is a predisposition-based defense. Generally, the defendant has the burden of raising the defense by showing by a fair preponderance of the evidence that an agent of the government initiated the idea of criminal conduct. However, no matter how involved the government is in inducing the commission of a crime, the *defense of entrapment* will not bar conviction if the government can prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.

■ Entrapment is not the only doctrine relevant to cases in which the government has encouraged the defendant to commit a crime. As we stated recently in *State v. Morris*, 272 N.W.2d 35 (Minn.1978):

"In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), five of the eight members of the United States Supreme Court concluded that the concept of fundamental fairness inherent in the due-process requirement will prevent conviction of even a predisposed defendant if the conduct of the government in participating in or inducing the commission of the crime is sufficiently outrageous. It is this so-called due-process defense with which we are concerned in this case. This is a legal defense which must be left to the court to apply. Although the Supreme Court has not articulated any useful standards for application of the defense, it is clear that there will be few cases in which the defense will succeed. As Mr. Justice Powell stated in his concurring opinion in *Hampton*, 'the cases, if any, in which proof of predisposition is not dispositive will be rare' and '[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction.' 425 U.S. 484, 495, n. 7, 96 S.Ct. 1646, 1653, 48 L.Ed.2d 113, 122. Thus, in *Hampton*, the Court refused to find that due process was violated by the drug sale conviction of a predisposed defendant where the government, through agents, had acted both as supplier of narcotics to the defendant and as his subsequent purchaser."

As we indicated in the *Morris* case, this due-process defense is a legal defense which must be left to the trial court to decide in a manner similar to the way it decides a search and seizure issue. In other words, the court must resolve any factual disputes necessary to determining whether the police conduct violated due process.

On the other hand, traditionally the defendant has had a right to have the true

entrapment defense—which focuses on predisposition—decided by the jury. Our decision in *State v. Grilli*, 304 Minn. 80, 230 N.W.2d 445 (1975), which was an entrapment case, recognized this right of the defendant but provided an alternative means of having entrapment decided by the court in any case in which the defendant elects to waive his right to have a jury decide the issue. This alternative was provided as a benefit to the defendant with a prior criminal record who did not wish to have evidence of his prior record admitted at trial, something which normally is permitted as bearing on predisposition in a case in which the jury decides the entrapment issue.

Some confusion has arisen by the use of the same term, "entrapment as a matter of law," to refer to different things. In the *Grilli* case we used the term to refer to the situation in which the defendant waives his right to have entrapment decided by the jury and elects to have the trial court decide it as trier of fact. Secondly, some cases use the phrase to refer to what, for the sake of clarity, should be termed the due-process defense. Thirdly, the phrase could be used to refer to those rare situations in which, although the defendant did not elect to have the trial court decide entrapment as trier of fact, the evidence which has come out at trial is such that the court is required to take the case from the jury and rule that there was entrapment as a matter of law. For clarity's sake, in the future we will use the phrase only when referring to this last situation.

In this case there apparently was some confusion caused by defense counsel's use of the phrase "entrapment as a matter of law" in referring to both true entrapment and the due-process defense. Defense counsel's intent may have been to have the court decide the due-process issue at the omnibus hearing and preserve for the jury the pre-

disposition-based entrapment defense. However, as we indicated, at the reopened omnibus hearing the court specifically asked defense counsel if he was submitting the entrapment issue to the court, and defense counsel, in defendant's presence, replied that he was and that he also wished to preserve his right to have the jury consider entrapment. *Grilli* does not permit the defense to have it both ways. If defense counsel's intent was to submit the due process issue and preserve the entrapment issue for the jury, he did not state this clearly at the time and, accordingly, the court was justified in concluding the defendant wanted him to decide both the entrapment issue and the due process issue.

■ In this respect one of defendant's issues is that the waiver of a jury trial on the entrapment issue was invalid because defendant himself did not waive the defense in open court. In *Grilli* we said that "If the defendant elects to have the court hear the claim, he must in open court or in writing waive a jury trial as to that issue." [1] 304 Minn. 95, 230 N.W.2d 455. While we intended to make it clear that the waiver should be by defendant, not by his counsel, in this case defendant was present when his counsel made the waiver and defendant may well be said to have ratified the waiver and made it his personal act.

■ Beyond this, the evidence of defendant's predisposition to commit the crime of illegal possession of heroin was overwhelming. Defendant's own testimony was particularly damning in this respect, so it would be difficult to argue seriously that the jury would have decided the entrapment issue any differently than the court did. In fact, the same basic evidence that defendant presented at the omnibus hearing was also admitted at the trial as bearing on the issue of whether defendant intended to exercise dominion over the drugs,

---

1. This language is similar to that used in Rule 26.01, subd. 1(2)(a), Rules of Criminal Procedure, regarding complete waiver of trial by jury, which says that "The defendant, with the approval of the court may waive jury trial provided he does so personally in writing or orally upon the record in open court, after

being advised by the court of his right to trial by jury and after having an opportunity to consult with counsel." See, also, A. B. A. Project on Standards for Criminal Justice, Standards Relating to The Defense Function, § 5.2.

and the jury clearly rejected the suggested conclusion.

As to the manner in which the court handled the due-process argument, we believe the following points are in order:

First, defendant did not really seek disclosure of the informant's identity but rather claimed that he knew who the informer was and wanted the prosecutor to produce this person so he could establish the due-process claim. In other words, if the person named by defendant in fact was not the informer, then defendant's due-process claim would have fallen flat. On the other hand, if this person was in fact the informant, then this person's testimony at the omnibus hearing would have been relevant. Whether this person was the informant is a matter which the court preferably should have discussed with the prosecution in camera. If he was the informant, then the court might have ordered the state to aid defendant in obtaining this person's presence at the omnibus hearing. However, defendant also could have sought a continuance so that he could locate and subpoena this person, but defendant's counsel admitted at oral argument that this was never done.

■ Under the circumstances, we do not believe the state's failure to produce the named witness required the court to accept the truth of defendant's testimony in ruling on the due-process claim. Rather, we believe the court was free to discredit defendant's testimony on this point. While the court also ruled that even if he were to credit the defendant's testimony he would still rule that defendant had not established a due-process violation, we do not go this far. Rather, we simply hold that defendant failed to establish that a government agent provided him with the heroin he was charged with possessing, and we do not reach the difficult issue—unanswered by the *Hampton* case—of whether it would be a due-process violation for the government to prosecute a defendant for possession of drugs furnished to him by the government.

Affirmed.

OTIS, Justice (dissenting).

Defendant was entitled to know whether or not the person he alleges furnished him with heroin was a government informant, since it is conceded by the majority that if he was an informant we would be faced with a difficult due-process question, the resolution of which might well constitute a defense to the "actual possession" count.

I would remand for a new trial on that charge only to afford defendant an opportunity to prove his claim that the state virtually thrust the heroin on him for the express purpose of promptly arresting him while it was still in his possession.

WAHL, Justice (dissenting).

I join in the dissent of Mr. Justice OTIS.