STATE of Minnesota, Appellant,

v.

Roland ABRAHAM, et al., Respondents,

Scott Thomas, Respondent.

No. C8–83–276.

Supreme Court of Minnesota.

July 15, 1983.

Hubert H. Humphrey III, Atty. Gen., Norman B. Coleman, Jr., and Richard D. Hodsdon, Sp. Asst. Attys. Gen., St. Paul, Thomas G. McCarthy, County Atty., Winthrop, for appellant.

Carey & Emmings and John W. Carey, Fairfax, for Roland Abraham, et al.

Genty & Eggert and Richard D. Genty, Winsted, for Scott Thomas.

**WAHL, Justice.**

This is an appeal by the state pursuant to Minn.R.Crim.P. 29.03, subd. 1. The appeal is from an order of the district court, which dismissed the prosecutions of 21 defendants for the gross misdemeanor offense of selling intoxicating liquor to a person under the age of 19, Minn.Stat. § 340.73, subd. 1 (1982), and the prosecutions of 5 other defendants for the misdemeanor offense of selling nonintoxicating malt liquor to a person under age 19 for consumption on the premises, Minn.Stat. § 340.035, subd. 1(1) (1982). The state argues on appeal that the court erred in deciding that the defendants were entrapped into making the sales. We requested supplementary briefs on the issue of whether the state's appeal is barred by the double jeopardy clauses of the United States Constitution and the Minnesota Constitution. Holding that the appeal is barred, we dismiss the appeal.

These prosecutions resulted from an investigation that had its genesis in the reception of complaints by the sheriff and county attorney for Sibley County that persons under the age of 19 were able to purchase alcoholic beverages in several named bars in the county without being required to show proper identification. The sheriff and county attorney decided in fairness that they should include all the bars and taverns in the county in their investigation. The sheriff obtained the assistance of an 18-year-old female and a 17-year-old male. In each case the decoys were instructed to enter the bar and attempt to purchase a 12-pack of beer if there was off-sale or a drink if on-sale only. In the latter situation, assuming a sale was made, they were either to carry the glass outside or empty it into a urine sample bottle. They were also told to produce valid identification if asked for identification and not to make any false representations concerning their age. Before and after each night's investigation, they were given breath tests. The results, both before and after, were always .00, indicating that they did not consume any of the alcohol they bought.

The decoys went to every bar and tavern in the county but one which was inadvertently missed. An undercover officer entered the bar first on each occasion and placed himself in a position where he could see the decoy(s) attempt a purchase. The

decoy(s) then entered and made the purchase. In four instances the undercover officer was not able to observe the sale. After the sale was made and the decoy(s) left the bar, another officer would enter the bar and, based on the description given by the decoy(s) and/or the undercover officer, identify the person who made the sale. The cases were then forwarded to the county attorney for complaints. No arrests were made at the scene. A total of 23 bars and 29 bartenders were checked. Of the 29 bartenders, 27 in 21 bars made sales. One of the 27 was not charged because of identification problems. The remaining 26 were charged. Of the 29 bartenders who were checked, only 4 requested to see any identification card.[1] Two of the 4 sold beer anyway. The 2 who did not were not charged.

Acting pursuant to *State v. Grilli,* 304 Minn. 80, 230 N.W.2d 445 (1975), the defendants waived their right to trial by jury on the issue of entrapment and submitted the issue to the trial court for decision at the omnibus hearing. The court decided the entrapment issue primarily on the basis of a written stipulation setting forth the facts as we have stated them. The trial court reasoned that the officers, by using the decoys, violated the law themselves and that they in effect "ensnare[d] the law abiding and innocent into the commission of crimes [that do not] even require an intent on the part of the wrongdoer." Specifically, the court determined (a) that the state, through its officers, violated the law in having the decoys purchase liquor and that this conduct constituted an improper inducement and (b) that the state had not proven that any of the defendants were predisposed to commit the crimes. With respect to this latter factor, the court stated that in its opinion the mere fact that the defendants willingly made the sales without inquiring was not itself indication of predis-

position. The court concluded that if the defendants were not entrapped then "perhaps the defense of entrapment is inapplicable in cases involving sales of intoxicating liquor."

■ Minnesota follows the so-called subjective test of entrapment, and the defendant must raise the defense by showing by a fair preponderance of the evidence that the government induced the commission of the crime. Once the defendant has raised the issue by showing inducement, the defense will bar a conviction unless the state can show beyond a reasonable doubt that the defendant was predisposed to commit the crime. *State v. Ford,* 276 N.W.2d 178, 182 (Minn.1979); *State v. Grilli,* 304 Minn. 80, 96, 230 N.W.2d 445, 456. Recently, in *State v. Olkon,* 299 N.W.2d 89, 107 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), we stated that in order to show inducement the defense must show "something in the nature of persuasion, badgering, or pressure by the state." We also stated in *Olkon* that the prosecution may prove predisposition "by evidence that the accused readily responded to the solicitation of the commission of a crime by the state."

A few courts have held that the defense of entrapment does not even apply to an illegal sale of liquor which does not require proof of any criminal intent. *See, e.g., Lee v. State,* 66 Okl.Cr. 399, 92 P.2d 621 (1939). The general view, however, is that the defense does apply to liquor-sale offenses. The cases are collected in Annot., 55 A.L. R.2d 1322 (1957). A Minnesota case to this effect is *State v. Boylan,* 158 Minn. 263, 197 N.W. 281 (1924). We implied in *Boylan* that generally the defense of entrapment would not succeed in the context of liquor-sale offenses.

1. Minn.Stat. § 340.942 (1982) provides:

In any criminal proceeding for the enforcement of the provisions of sections 340.035, 340.73, 340.83, 340.941, relating to the sale or furnishing of non-intoxicating malt liquor or intoxicating liquor to the persons described therein, the defendant may establish by competent evidence that he has made a bona fide

and careful investigation of the status of such person and he has determined upon evidence sufficient to convince a careful and prudent person that such sale is not a violation of said sections; such evidence shall be considered in determining whether the defendant is guilty of intent to violate said laws.

Cases that arise in the context of laws prohibiting the *general* sale of liquor are not completely in point because in those cases the defendant, by definition, knows that the sale is illegal. Cases that deal with the issue of entrapment in the context of sales to minors include *Village of Spring Lake v. Gardner,* 38 Mich.App. 189, 196 N.W.2d 5 (1972); *State v. Parr,* 129 Mont. 175, 283 P.2d 1086 (1955).

It is strongly arguable that the trial court erred in determining that the defendants were entrapped.[2] However, we do not decide this issue because of our holding that the double jeopardy clause bars the state's appeal.

■ We base our holding that the state's appeal is barred on the decision of the United States Supreme Court in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). The general rule applied in *Scott* is that "[a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal." 437 U.S. at 91, 98 S.Ct. at 2193 (footnote omitted). *Scott* states that in determining whether a ruling by the trial court constitutes a judgment of acquittal, the trial court's characterization of its own action is not controlling. Rather, one must look behind the label and determine whether the trial court's ruling relates to the question of the defendant's factual guilt or innocence. The court stated:

Our opinion in *Burks* [*v. United States,* 437 U.S. 1, 91 S.Ct. 2141, 57 L.Ed.2d 1 (1978)] necessarily holds that there has been a "failure of proof," * * * requiring an acquittal when the Government does not submit sufficient evidence to rebut a

defendant's essentially factual defense of insanity, though it may otherwise be entitled to have its case submitted to the jury. The defense of insanity, like the defense of entrapment, arises from "the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense," *United States v. Russell,* 411 U.S. 423, 435 [93 S.Ct. 1637, 1644, 36 L.Ed.2d 366] (1973), where other facts established to the satisfaction of the trier of fact provide a legally adequate justification for otherwise criminal acts. Such a factual finding *does* "necessarily establish the criminal defendant's lack of criminal culpability," * * * under the existing law; the fact that "the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles," * * * affects the accuracy of that determination, but it does not alter its essential character. By contrast, the dismissal of an indictment for preindictment delay represents a legal judgment that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation.

437 U.S. at 97–98, 98 S.Ct. at 2197 (footnote omitted). The rule of the *Scott* case is binding on the states, as is the rule that jeopardy attaches when the jury is impaneled or, in a bench trial, when the first witness is sworn or when evidence is taken. *Christ v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

■ As our decision in *State v. Ford,* 276 N.W.2d 178, 183, makes clear, when the defendant elects to have the claim of entrapment decided by the trial court, the trial court decides it *as trier of fact.*[3] Thus,

---

**2.** The authorities attempted to include all the bars and taverns in the investigation and, although they used "decoys," they did not try to deceive the sellers into thinking that the decoys were of age. Defendants did not show that the decoys persuaded, badgered, pressured or otherwise induced them to violate the law. The evidence that defendants readily sold the liquor, either without checking the identification cards of the decoys or without paying any

attention to the information on the cards, showed that the defendants were predisposed to commit the crimes.

**3.** The *Ford* case should be consulted for its analytical precision. Particularly, it clarified the meaning of the phrase "entrapment as a matter of law," a phrase which theretofore had been used rather loosely and confusingly.

if the trial court as trier of fact decides that there was no entrapment, the defendant is barred from raising the issue during the jury phase of the trial. On the other hand, if the trial court decides the issue in the defendant's favor, that is the same as a finding of not guilty and therefore ends the matter, causing the prosecution to be terminated and further prosecution barred. Thus, although the state's appeal in the instant case is styled as a pretrial appeal, in reality it is an appeal by the state following an acquittal.

■ We indicated in *Grilli* that appeal by the state was permissible under Minn.Stat. § 632.11. 304 Minn. at 95, 230 N.W.2d at 455. *Scott,* decided subsequent to *Grilli,* dictates a contrary result as to appeal. There has been criticism of the reasoning of the *Scott* case. *See, e.g.,* Westen & Drubel, *Toward a General Theory of Double Jeopardy,* 1978 Sup.Ct.Rev. 81, 143–145. How-

ever, we are bound by the *Scott* decision and the principles expressed therein. Following *Scott,* we hold that when the trial court, acting as trier of fact, decides that there was entrapment, that ends the prosecution and constitutes an acquittal from which the state may not appeal.

Attorney for respondents Abraham, et al., is allowed $400 attorney fees on this appeal.

Attorney for respondent Thomas is allowed $400 attorney fees on this appeal.

Appeal dismissed.