**In the Matter of the WELFARE OF G.D., Child.**

No. C3–91–408.

Court of Appeals of Minnesota.

July 23, 1991.

Neil R. Tangen, Tangen Law Office, Starbuck, for appellant child.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, David L. Mennis, Swift County Atty., Mary F. Kelash, Asst. County Atty., Benson, for respondent state.

Considered and decided by RANDALL, P.J., HUSPENI and SCHUMACHER, JJ.

## OPINION

HUSPENI, Judge.

Juvenile appellant alleges the trial court violated his right to speedy trial when it denied his motion to dismiss and adjudicated him a delinquent child. We affirm.

## FACTS

Two officers assigned to the drug task force as narcotics investigators set up a drug purchase with appellant, G.D., in Appleton, Minnesota. Officer Poll was undercover; Officer Kappers ran surveillance and monitored the transaction by a transmitter hidden on Poll's body. The officers had seen appellant involved in a drug deal

in June 1990 and had received a tip from a confidential informant that appellant was dealing drugs.

On the evening of July 18, 1990, Poll met appellant, then age 17, in a cafe and said he was interested in purchasing drugs. Appellant asked Poll how much he wanted. Poll said he wanted an "eight ball" (3.5 grams of cocaine) and one-half ounce of marijuana. Appellant then priced the cocaine at $250–$350 and the marijuana at $60–$70. Poll gave appellant $350 for cocaine and $80 for marijuana. They arranged to meet around midnight for delivery because appellant said he had to drive to Willmar to get the drugs.

When they met that night in the city park, appellant gave Poll a foil packet which appellant said contained approximately two grams of cocaine; he did not have the marijuana. They arranged to meet again the next day for the marijuana and a $125 refund since appellant delivered less cocaine than Poll had requested. When they met at appellant's home the next day, appellant had neither the money nor the marijuana. Appellant told Poll to meet him at 5:00 p.m. in the park. When they met later, appellant refused to speak to Poll or to deal with him any further. Appellant never delivered the marijuana or the $125 to Poll.

After testing the substance in the foil packet which Poll received from appellant, the Bureau of Criminal Apprehension laboratory determined it contained 1.3 grams of a white powder containing cocaine.

Based on this evidence, respondent Swift County filed a delinquency petition alleging that appellant violated Minn.Stat. § 152.-024, subds. 1(1), 2(2), 3(a) (1990), and Minn. Stat. § 152.025, subds. 2(1), 3(a) (1990). Respondent later moved for a continuance because its primary witnesses, the two undercover officers, were unavailable for the trial date. The trial court denied the motion for a continuance because of the 60–day statutory requirement for speedy trial. Respondent then moved to dismiss with the understanding that respondent would refile the petition at a later date. The trial court granted the motion to dismiss. When respondent refiled in January, the trial court denied appellant's motion to dismiss on the grounds that he had been deprived of his right to speedy trial. After an adjudicatory hearing, the trial court adjudicated appellant a delinquent child based on its finding that the evidence was sufficient to prove that appellant possessed drugs, sold drugs, and possessed drugs with the intent to sell them.

## ISSUES

1. Did the trial court violate appellant's right to speedy trial so as to warrant dismissal of the delinquency petition when it denied appellant's motion to dismiss and allowed the hearing to proceed?

2. Did the trial court err when it failed to find that appellant was entrapped?

3. Did the record contain sufficient evidence to prove beyond a reasonable doubt that appellant possessed drugs, sold drugs, and possessed drugs with the intent to sell them?

## ANALYSIS

### I.

A criminal defendant receives the guarantees of a speedy trial under the constitutions of the United States and the State of Minnesota. U.S. Const. amends. VI, XIV; Minn. Const. art. I, § 6. Appellant argues that the trial court violated this right when it allowed respondent to dismiss the initial delinquency petition and then refile the petition three weeks later. We disagree.

■ Generally, Minn.R.Crim.P. 11.10 defines what Minnesota courts consider reasonable time within which the state must bring an accused to trial:

> [T]he trial shall be commenced within sixty (60) days from the date of the demand unless good cause is shown upon the prosecuting attorney's or the defendant's motion or upon the court's initiative why the defendant should not be brought to trial within that period.

Specifically, in cases involving juvenile delinquency petitions, Minn.R.Juv.Cts. 27.02, subd. 1(b) requires:

A trial shall commence * * * for a child not held in detention, within sixty (60) days from the date of the denial of the allegations of the petition, unless good cause is shown by the county attorney or the child's counsel why the child should not be brought to trial within sixty (60) days.

Rule 27.02 does not require that the juvenile demand a speedy trial; rather, the 60–day period automatically begins to run when the juvenile denies the delinquency petition. *Id.; In re Welfare of J.D.P.*, 410 N.W.2d 1, 2 (Minn.App.1987), *pet. for rev. granted* (Minn. Sept. 23, 1987), *appeal dismissed* (Minn. Nov. 18, 1987).

This 60–day rule is not unconditional, however. Both Minn.R.Juv.Cts. 27.02, subd. 1(b), and Minn.R.Crim.P. 11.10 allow delays for "good cause." Indeed, the Minnesota Supreme Court has found that "[b]ecause [rule 11.10] permits good cause delay, it cannot be said that a 'clear official duty' to absolutely conduct all trials within 60 days is created by the rule." *McIntosh v. Davis*, 441 N.W.2d 115, 119 (Minn.1989).

■ In order to determine when such a delay constitutes a violation of an accused's right to speedy trial, the Minnesota Supreme Court has adopted the four-part test which the United States Supreme Court enunciated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972):

In *Barker* the Court refused to establish an arbitrary and rigid time period for determining whether the right to speedy trial has been violated and instead adopted a balancing test for reviewing such claims. * * * The Court directed trial judges to balance the following factors: 1) length of delay; 2) reason for delay; 3) whether the defendant asserted the right; and 4) whether there was any prejudice.

*State v. Friberg*, 435 N.W.2d 509, 512 (Minn.1989) (citations omitted). Whether a defendant has been denied the right to speedy trial is a matter of judicial discretion. *Id.* at 513.

[D]elays beyond the 60–day limit simply *raise the presumption* that a violation has occurred and require the trial court to conduct a further inquiry to determine if there has been a violation of the defendant's right to trial.

*Id.* (emphasis added).

Appellant cites *State v. Kasper*, 411 N.W.2d 182, 184 (Minn.1987) as prohibiting what the prosecutor did in this case: dismissing the petition and later refiling. However, *Kasper* is distinguishable on its facts and contains an element of bad faith not present here. In *Kasper*, the prosecutor dismissed a tab charge after the court denied his motion for a continuance and then immediately filed a formal complaint in order to begin the 60–day period over again and preserve the case. *Id.* at 183. After 140 days the trial still had not commenced. The *Kasper* court admonished the prosecutor's "maneuvering" around the 60–day speedy trial requirement and held that although the time between dismissal and refiling of the petition tolls the running of the 60–day speedy trial guarantee, the 60–day time period should not start anew upon refiling. *Id.* at 184–85.

Here, in contrast to *Kasper*, the trial court found that 42 days had passed and 18 days remained for trial when the first petition was dismissed. After refiling, another 12 days passed before the court heard appellant's motion to dismiss; six of the original 60 days remained when appellant's motion was denied. The adjudicatory hearing occurred three days later. Therefore, appellant received his hearing on day 57 of the 60 days allotted for speedy trial.

■ However, because appellant presents us with an underlying issue of first impression, we cannot end our inquiry by distinguishing *Kasper* from this case. Appellant, in effect, argues that once an accused denies the delinquency petition, the state has an uninterruptable period of 60 days to bring the accused to trial; he would allow for no method of stopping the clock temporarily once it has begun running. Following that line of reasoning, appellant argues that the clock continued running in this case even after the court dismissed respondent's first petition. Thus, appellant alleges that the trial court

erred first when it granted respondent's motion to dismiss on December 26, and erred again when it denied appellant's motion to dismiss the new petition on January 28, because both of those rulings allowed the proceedings to continue beyond the 60–day mark.

The United States Supreme Court and the Eighth Circuit have addressed the issue which appellant raises, and both courts have resolved the issue against him. The sixth amendment right to a speedy trial

> has no application after the Government, acting in good faith, formally drops charges. * * * Once charges are dismissed, * * * the formerly accused is, at most, in the same position as any other subject of a criminal investigation. * * * [W]ith no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.

*United States v. MacDonald,* 456 U.S. 1, 7–9, 102 S.Ct. 1497, 1501–02, 71 L.Ed.2d 696 (1982); *accord United States v. Pajari,* 715 F.2d 1378, 1384 (8th Cir.1983).

We find these cases persuasive in our analysis here. Appellant's right to speedy trial began when he denied the delinquency petition. The State moved for a dismissal and the court granted that request.[1] We believe that good faith may be inferred from the trial court's dismissal without prejudice. Appellant's right to speedy trial lapsed during that interim period when he was not charged with an offense, under arrest, in custody, or under any restriction. While appellant had a right to speedy trial, once the delinquency petition was filed against him, that right did not attach before he was charged. *State v. F.C.R.,* 276 N.W.2d 636, 639 (Minn.1979) (citing *United States v. Marion,* 404 U.S. 307, 313, 321, 92 S.Ct. 455, 459, 463–64, 30 L.Ed.2d 468 (1971)). Appellant's right attached again when respondent refiled the petition and reinstated the charges. Thus we find no violation of appellant's right to a speedy trial and conclude that the trial court com-

plied with the rationale of *Pajari* and *Kasper.*

█ Even if for the sake of further analysis we were to assume that an uninterruptable 60–day period is available to meet speedy trial requirements, the *Barker* analysis would reveal no violation of appellant's constitutional rights.

A. Length of Delay

If we ignored *MacDonald* and *Pajari* and counted the 60 days without interruption, appellant's hearing occurred only 39 days after the 60–day period. Appellant himself contributed to that delay by filing a writ of prohibition to this court. We conclude that this delay was not unreasonable.

B. Reason for Delay

Respondent moved for the initial continuance because its chief witnesses were unavailable on the trial date. Delay due to witness unavailability is permissible when the delay is "neither lengthy nor unfairly prejudicial." *State v. Terry,* 295 N.W.2d 95, 96 (Minn.1980) (continuance did not violate defendant's right to speedy trial); *see also State v. Reese,* 446 N.W.2d 173, 179 (Minn.App.1989) (delay due to witness unavailability was "legitimate" where not "extreme or prejudicial"), *pet. for rev. denied* (Minn. Nov. 15, 1989). The trial court chose to deny the continuance, but granted a dismissal without prejudice with knowledge that respondent would refile when the witnesses were available. The resulting delay of 39 days was for a legitimate reason and was not "extreme" in duration.

C. Assertion of the Right to Trial

Under Minn.R.Juv.Cts. 27.02, the 60–day period for speedy trial begins automatically when the juvenile denies the delinquency petition. In addition, appellant's counsel clearly asserted the right and objected to the possible delay at the hearings in December, January and February. Appellant meets all requirements of this *Barker* factor.

---

1. In contrast, the prosecutor in *Kasper,* 411 N.W.2d at 185, dismissed the tab charge without involvement or approval of the trial court and filed a formal complaint at the same time.

## D. Prejudice to Appellant

Appellant alleges that he has suffered great prejudice because of the delay in his trial. Prejudice may occur when witnesses die, become unavailable or lose their memory due to delay, *see Barker,* 407 U.S. at 534, 92 S.Ct. at 2194; when the defendant loses an opportunity to make a crucial decision regarding his confinement or treatment, *In re Welfare of J.G.B.,* 443 N.W.2d 867, 871 (Minn.App.1989); or when some other factor seriously affects the strength of appellant's case. *Friberg,* 435 N.W.2d at 515.

Contrary to appellant's contentions, the record does not demonstrate any such prejudice in this case. Appellant was released to the custody of his mother in November. He remained unconfined throughout the proceedings. He lost no witnesses or testimony due to the delay. Other than the regular stress that accompanies a delinquency proceeding, appellant has not produced evidence of prejudice to his case.

The *Barker* analysis thus establishes that even if the 60–days for speedy trial ran without interruption, and a delay occurred, that delay was minimal, for good reason, and not prejudicial to appellant.

## II.

Appellant next contends that he established a sufficient case of entrapment. We cannot agree. The defense of entrapment has two necessary elements: Inducement by the state and the accused's predisposition to criminal conduct. *State v. Grilli,* 304 Minn. 80, 91–92, 230 N.W.2d 445, 453 (1975). When the trial court decides the issue of entrapment, it acts as the trier of fact. *State v. Abraham,* 335 N.W.2d 745, 748 (Minn.1983) (citing *State v. Ford,* 276 N.W.2d 178, 183 (Minn.1979)).

As the person charged, appellant carried the burden of raising the issue of entrapment by a "fair preponderance of the evidence—either through cross-examination of the state's witnesses or through defense testimony—that the government induced the commission of the crime." *State v. Vaughn,* 361 N.W.2d 54, 57 (Minn.

1985). To establish inducement, appellant had to produce evidence of "persuasion, badgering, or pressure by the state." *State v. Olkon,* 299 N.W.2d 89, 107 (Minn. 1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

Both procedurally and substantively, appellant presents a weak case for entrapment. Procedurally, he presented no witness testimony at the adjudicatory hearing other than that of Officer Kappers, whom he recalled to the stand. When he cross-examined respondent's witnesses, appellant did not impeach them or elicit testimony sufficient to establish inducement "by a fair preponderance."

Substantively, we are not persuaded by appellant's line of argument which alleges that he is operating with a "child's mind" that is much different and more impressionable than an adult's mind. The record establishes that appellant was 17 years old when the drug deal occurred. Officer Poll testified to appellant's willingness to deal. Further, appellant failed on cross-examination to establish that Officer Poll badgered or pressured him into the transaction.

Even if we were to assume for the sake of further analysis that appellant did raise the question of entrapment by a preponderance of the evidence, we cannot conclude our inquiry at that point. We must examine whether the state went forward with evidence to "prove beyond a reasonable doubt that [appellant] was predisposed to commit the crime charged." *Grilli,* 304 Minn. at 96, 230 N.W.2d at 456. Evidence of inducement by the state may be excused or mitigated when the state can show the accused's predisposition to criminal conduct by evidence of

(a) defendant's active solicitation to commit the crime, (b) prior criminal convictions, or (c) prior criminal activity not resulting in conviction, * * * or (d) defendant's criminal reputation, or by any other adequate means.

*Grilli,* 304 Minn. at 89, 230 N.W.2d at 452. Further, to prove predisposition the state may introduce "evidence that the accused readily responded to the solicitation of the

commission of a crime by the state." *Olkon*, 299 N.W.2d at 108.

We conclude that the record establishes appellant's predisposition to engage in drug transactions. The two officers testified that appellant had accompanied another drug dealer on a drug run, negotiation and sale in June 1990. They had also received a tip from an informant regarding appellant's drug activity. Further, after Officer Poll made the initial inquiry for the sale, appellant responded willingly with prices, amounts, delivery times, and an explanation that he had to drive to Willmar for the drugs. In addition, appellant set up four meetings with Officer Poll to complete the sale. Such evidence is sufficient to establish predisposition. *See State v. Rothstein*, 422 N.W.2d 300, 302 (Minn.App. 1988) (similar fact situation of undercover officer purchasing controlled substances from defendant; where defendant readily responded to officer's solicitation, made numerous phone calls to get drugs, and asked officer to return for pickup of the drugs, court found evidence sufficient to overcome defendant's lack of criminal history as well as his argument against predisposition).

The record supports the trial court's conclusion that appellant was not entrapped.

### III.

Finally, appellant argues that a discrepancy in the amount of cocaine involved in the transaction renders the evidence insufficient to sustain the delinquency adjudication. Again, we cannot agree. In reviewing an insufficiency of evidence claim, this court must determine whether "given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

Minn.Stat. §§ 152.024, subds. 1(1), 2(2), 3(a), and 152.025, subds. 2(1) and 3(a) do not require proof of a specific quantity of cocaine for a conviction. Furthermore, it was appellant who told Officer Poll upon delivery that the foil packet contained two grams of cocaine. The officers based their police reports of the transaction on this inaccurate information they received from appellant. The Bureau of Criminal Apprehension laboratory later determined that the packet contained 1.3 grams of a white powder containing cocaine. This slight discrepancy does not detract from the facts on record that appellant possessed and conducted the sale of a controlled substance. The evidence already discussed herein creates a sufficient record upon which the court reasonably could have concluded that appellant violated these statutes.

### DECISION

Appellant's right to speedy trial was not violated when respondent, acting in good faith, dismissed the delinquency petition, refiled at a later date, and brought appellant to trial within the 60–day speedy trial period. When respondent refiled the petition, the trial court properly resumed counting the days for speedy trial on the day it had left off at dismissal. The evidence is sufficient to sustain the adjudication of appellant as a delinquent child.

Affirmed.