STATE of Minnesota, Respondent,

v.

Karen Kay FITZPATRICK, Appellant.

No. A03–1480.

Court of Appeals of Minnesota.

Dec. 28, 2004.

388

Mike Hatch, Attorney General, St. Paul, MN and Ross E. Arneson, Blue Earth County Attorney, Patrick R. McDermott, Susan B. DeVos, Assistant County Attorneys, Mankato, MN, for respondent.

Allen P. Eskens, Paul E. Grabitske, Eskens, Gibson & Behm Law Firm, Chtd., Mankato, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; WILLIS,

Judge; and CRIPPEN, Judge.*

## OPINION

WILLIS, Judge.

Appellant Karen Kay Fitzpatrick challenges her conviction of providing alcoholic beverages to a minor, arguing that Blue Earth County's compliance check violated both her due-process rights and Minnesota's statute prohibiting the underage purchase of alcoholic beverages. Because the district court did not err by concluding that the due-process defense arising from government overinvolvement in the prohibited activity was not available to Fitzpatrick; because we cannot infer a legislative intent to prohibit the type of compliance check at issue; and because there is no authority to suggest that constitutional principles regarding the reasonableness of searches and seizures apply, we affirm.

## FACTS

In May 2002, the Blue Earth County Sheriff's Office conducted a compliance check regarding the sale of alcoholic beverages to minors at Jack's Bar & Grill in Good Thunder, Minnesota. The sheriff's office used a 19–year–old undercover purchaser, wired him with audio-surveillance equipment, gave him a 20–dollar bill, and sent him into the bar to attempt to purchase alcoholic beverages. The underage purchaser wore a khaki cap with blue cursive writing that identified him as a member of the "Blue Earth County Sheriff's Office Alcohol Compliance Team." Detective Willis Purvis and a colleague instructed the underage purchaser to produce identification showing his true age at the bartender's request.

The underage purchaser entered the bar and asked to buy a 12–pack of beer from appellant Karen Kay Fitzpatrick. Without asking for identification, Fitzpatrick made the sale, and the underage purchaser left the bar with the beer. After taking possession of the beer, the detectives entered the bar. Fitzpatrick admitted to the sale, and the officers verified that the 20–dollar bill used in the sale was the one that they had given to the underage purchaser. Fitzpatrick was charged with providing alcoholic beverages to a minor. She subsequently moved to dismiss the charge.

At a contested omnibus hearing in March 2003, Detective Purvis testified that the sheriff's office had been conducting the compliance checks since 1997 or 1998. He testified that minor consumption of alcoholic beverages is a significant problem in Blue Earth County and that the reason for conducting compliance checks was to raise awareness of the problem among alcoholic-beverage retailers and to keep alcoholic beverages out of the hands of minors.

Purvis testified that, on average, the sheriff's office conducts compliance checks at every alcoholic-beverage retailer in Blue Earth County twice annually. He further testified that, generally, the sheriff's office does not have any particularized suspicion of criminal activity before conducting a compliance check. He stated that in this case the sheriff's office had no specific suspicion that Fitzpatrick was selling alcoholic beverages to minors but that this particular retailer had been a "problem spot" in the past, having failed at least two previous compliance checks.

The district court denied Fitzpatrick's motion to dismiss and subsequently found

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

her guilty of providing alcoholic beverages to a minor. This appeal followed.

## ISSUES

I. Does a law-enforcement compliance check that uses an undercover, underage purchaser of alcoholic beverages constitute government overinvolvement in the criminal conduct with which the defendant is subsequently charged, violating the defendant's due-process rights?

II. Does the absence of an enforcement exception in Minnesota's statute prohibiting the underage purchase of alcoholic beverages, Minn.Stat. § 340A.503, subd. 2(2) (2002), prohibit law enforcement from conducting a compliance check that uses an undercover, underage purchaser of alcoholic beverages?

III. Should an objective, individualized, articulable suspicion of criminal wrongdoing on the part of an employee of an alcoholic-beverage retailer be a prerequisite for a valid law-enforcement compliance check that uses an undercover, underage purchaser of alcoholic beverages?

## ANALYSIS

### I.

■ Fitzpatrick argues that the sheriff's office manufactured the sale by using an underage person to purchase alcoholic beverages without evidence that an illegal sale would otherwise have occurred; that the use of an underage purchaser to break the law in order to enforce the law is repugnant to a sense of justice; and that the compliance check revealed simply a desire by the sheriff's office to obtain a conviction. The district court determined that the compliance check did not violate Fitzpatrick's due-process rights.

The due-process defense arising from government over-involvement in the criminal conduct with which a defendant is subsequently charged "is a legal defense which must be left to the trial court to decide in a manner similar to the way it decides a search and seizure issue. In other words, the court must resolve any factual disputes necessary to determining whether the police conduct violated due process." *State v. Ford,* 276 N.W.2d 178, 182 (Minn.1979). After accepting all factual findings by the district court that are not clearly erroneous, the ultimate question for this court is whether the charge at issue violated due process, which is a legal question reviewed de novo. *See State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998) (stating that a mixed question of law and fact requires "the appellate court to apply the controlling legal standard to historical facts as determined by the trial court"). Here, the record supports the district court's findings of fact; we therefore turn to analysis of the legal question.

■ This court has applied guidelines for determining whether a defendant has access to the due-process defense on the ground of government overinvolvement in the criminal conduct with which the defendant is subsequently charged, adopting factors applied by the court in *People v. Isaacson,* 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78, 83 (1978). *State v. James,* 484 N.W.2d 799 (Minn.App.1992), *review denied* (Minn. June 30, 1992). These factors are:

(1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity.

(2) whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice.

(3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts

such as sympathy or past friendship, by temptation, of exorbitant gain, or by persistent solicitation in the fac[e] of unwillingness.

(4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace.

*Id.* at 802.

The district court determined that "it cannot be said that the police manufactured a crime that would not likely have occurred." We agree. The record shows that the sheriff's office did not manufacture a crime but rather involved itself in the ongoing problem of the sale of alcoholic beverages to minors in Blue Earth County and merely provided the opportunity for Fitzpatrick to commit the crime, which she did. Nor was it entirely unlikely that the crime would otherwise have been committed: as Detective Purvis testified, this particular retailer had failed at least two previous compliance checks and had been designated a "problem spot."

The district court determined that the conduct of the sheriff's office, while arguably "criminal or improper," was not repugnant to a sense of justice because the underage purchaser "wore a cap identifying himself as a member of the compliance team, and was instructed to give correct information regarding his age if asked." Detective Purvis testified that the sheriff's office had instituted a policy of identifying its underage purchasers as members of the alcohol-compliance team in response to retailer concerns regarding entrapment. The record supports the district court's determination.

Fitzpatrick admits that "there is no evidence of [her] will being overcome" by the sheriff's office but argues that its motivation of enforcement of the statute was not sufficiently related to the purposes of crime prevention and protection of the populace to satisfy the *James* requirement. The district court determined that "there is no showing in the record that the police desired a conviction for any reason other than to prevent further crime." Again, Detective Purvis testified that the compliance checks were a response to the problem of underage drinking in Blue Earth County and that the checks were an effort to both heighten awareness of the problem and to keep alcohol out of the hands of underage persons. The record supports the district court's determination on this factor as well.

The district court did not err by determining that Fitzpatrick's due-process rights were not violated.

## II.

■ Fitzpatrick argues that the plain language of the statutes prohibiting the purchase of alcoholic beverages by minors and the sale of alcoholic beverages to minors does not give police the authority to break the law in order to enforce the law. Fitzpatrick compares the statute prohibiting the underage purchase of alcoholic beverages with the statute prohibiting the underage purchase of tobacco and points out that Minn.Stat. § 609.685, subd. 5(b) (2002), provides that the penalties applicable to an underage purchaser of tobacco "do not apply to a person under the age of 18 years who purchases or attempts to purchase tobacco ... for training, education, research, *or enforcement purposes.*" *Id.* (emphasis added). Fitzpatrick argues that the legislature intended to prohibit the law-enforcement activity at issue here by purposefully omitting an enforcement exception in the statute prohibiting the underage purchase of alcoholic beverages. The conduct of the sheriff's department, she argues, is therefore a violation

of the statute, compelling the suppression of all evidence..

■ The district court determined that the lack of an enforcement exception in the statute prohibiting the underage purchase of alcoholic beverages (Minn.Stat. § 340A.503, subd. 2(2)-(3) (2002)) is irrelevant. We agree. The violation at issue here is an illegal sale of alcoholic beverages, not an illegal purchase. Fitzpatrick was charged with violating the statute that makes it "unlawful for any person ... *to sell, barter, furnish, or give* alcoholic beverages to a person under 21 years of age." *Id.*, subd. 2(1) (emphasis added); *see* Minn. Stat. § 645.16 (2002) (stating that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."). The language of the statute regarding illegal sales is plain, and there is no dispute that Fitzpatrick violated it. Further, Fitzpatrick cites no authority for the proposition that even if the sheriff's office aided and abetted a violation of the illegal-purchase provision, evidence of her illegal sale should be suppressed.

We conclude that Fitzpatrick's statutory argument is without merit.

### III.

■ We also address an argument that the district court chose not to consider but that Fitzpatrick has revived on appeal. Fitzpatrick argues that the constitutional principles relating to unreasonable searches and seizures should apply here. Specifically, she urges this court to find that an objective, individualized, articulable suspicion of criminal wrongdoing on the part of an employee of an alcoholic-beverage retailer is a prerequisite to a valid compliance check. Because the sheriff's office did not have an individualized suspicion that Fitzpatrick was selling alcoholic beverages to underage persons, she argues that its conduct was unconstitutional and that the district court should have suppressed the evidence.

■ But there is no authority to suggest that search-and-seizure jurisprudence is "relevant to cases in which the government has encouraged the defendant to commit a crime." *Ford,* 276 N.W.2d at 182–83 (stating that only the doctrines of entrapment and the due-process defense are relevant to such cases). The extension of existing law is the task of the supreme court or the legislature, not of this court. *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). Further, merely entering an alcoholic-beverage retail establishment to buy beer is neither a "search" nor a "seizure" for constitutional purposes.

■ Finally, Fitzpatrick argues that the compliance check deprived her of a fundamental liberty interest in her employment. But because she raises the issue for the first time in her brief on appeal, we do not review the issue. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) (stating that "[t]his court generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure").

### DECISION

Because Fitzpatrick failed to show that the sheriff's office violated her due-process rights; because her statutory argument does not show that the legislature intended to prohibit the government conduct at issue here; and because constitutional principles regarding unreasonable searches and seizures are not applicable to this case, we affirm.

**Affirmed.**