*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1325**

State of Minnesota,
Respondent,

vs.

Bruce Leonard Chouinard,
Appellant.

**Filed October 13, 2025**
**Reversed**
**Wheelock, Judge**

Benton County District Court
File No. 05-CR-23-995

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathleen L. Reuter, Benton County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Wheelock, Presiding Judge; Frisch, Chief Judge; and

Halbrooks, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WHEELOCK**, Judge

Appellant challenges his conviction for possessing ammunition he was ineligible to possess because of a prior conviction. Because the order discharging appellant from probation for the prior conviction did not accurately inform him of his legal obligations at the time it was given to him, appellant's conviction for possession of ammunition was obtained in violation of his due-process rights, and we reverse.

## FACTS

In 2013, appellant Bruce Leonard Chouinard was convicted of and sentenced for an offense that was defined as a crime of violence under Minn. Stat. § 624.712, subd. 5 (2012), and in March 2016, he was discharged from probation for that conviction. The discharge order signed by the district court stated, "It is ordered that Bruce Leonard Chouinard is hereby discharged from probation and restored to all civil rights and full citizenship with full right to vote and hold office the same as if said conviction had not taken place." On the face of the order, a box was checked next to a warning that stated, "Because you have been convicted of a crime of violence under Minn. Statute 624.712, subd. 5, you cannot ship, transport, possess, or receive a firearm for the remainder of your lifetime." The advisory said nothing about Chouinard's right to possess ammunition. After Chouinard was sentenced but before he was discharged from probation, the legislature amended the firearm-prohibition statute to prohibit the possession of both firearms and ammunition. 2015 Minn. Laws ch. 65, art. 3, § 26, at 502-05 (codified at Minn. Stat. § 624.713, subd. 1

(Supp. 2015)). The amendment went into effect on August 1, 2015, *id.*, and thus was effective when Chouinard was discharged from probation in 2016.

In May 2023, a deputy from the Benton County Sheriff's Department responded to a call from Chouinard reporting a civil dispute at his place of residence that involved his landlord and another individual. After the deputy spoke with the other two people regarding the incident, Chouinard invited the deputy into his apartment. Chouinard showed the deputy around the space, including a storage area where Chouinard had "numerous rounds of ammunition, including rifle and pistol cartridges" that were placed in a homemade display. Chouinard told the deputy that he used to be a gunsmith, that he augmented his income by selling ammunition, and that all of the ammunition the deputy observed in the storage room had been sold and he was waiting for the buyer to pick it up.

The deputy, who knew Chouinard and his criminal record, informed Chouinard that he could not possess ammunition because of his 2013 conviction for a crime of violence. Chouinard said that he "wasn't aware" that he could not possess ammunition; he "thought it was just firearms." During his testimony, the deputy agreed that Chouinard was "very compliant and did what [the deputy] asked him to do." Respondent State of Minnesota charged Chouinard with one count of unlawful possession of ammunition in violation of Minn. Stat. § 624.713, subd. 1(2) (2022).

In March 2024, Chouinard appeared for trial on his ammunition-possession charge, and the jury found him guilty. The district court denied Chouinard's motion for a dispositional departure, but it granted him a durational departure because Chouinard's conduct was "substantially or significantly . . . less serious than that of a typical violation

3

of this statute," imposing a sentence of imprisonment for one year and one day. Chouinard appealed his conviction, and this court granted his motion for a stay of the direct appeal so that he could petition the district court for postconviction relief. Chouinard filed his petition and submitted evidence of his 2013 warrant of commitment and the 2016 order discharging him from probation. The district court denied Chouinard's petition for relief, and this court lifted the stay.

Chouinard appeals.

**DECISION**

Chouinard makes two arguments on appeal. First, he argues that the state failed to prove that he knew that he could not possess ammunition at the time the deputy seized ammunition from him. Second, he argues that his conviction was obtained in violation of his due-process rights because the district court affirmatively misled him when it informed him of his rights at the time he was discharged from probation for the prior conviction in 2016 but did not inform him of the prohibition on possessing ammunition. Because we agree with Chouinard's second argument as to due process and it is dispositive, we do not address his first argument as to the sufficiency of the evidence.

Chouinard argues that, when the district court discharged him from probation, its statement on his discharge form omitted that he is prohibited from possessing ammunition, thereby misinforming him because the statement on the discharge form was not an accurate statement of the law at the time. Thus, Chouinard contends, his conviction for possessing ammunition that he was ineligible to possess was obtained in violation of his due-process rights. The state argues that there was no due-process violation because an omission is not

4

a misstatement of the law and a mistake as to the law is not a defense. In denying Chouinard's petition for relief, the district court determined that, because the discharge form was not an exhaustive list of Chouinard's rights or restrictions thereon, it was not misleading and Chouinard's conviction did not violate due process.

Whether the state's prosecution of a defendant violates the Due Process Clause is a legal question that we review de novo. *State v. Fitzpatrick*, 690 N.W.2d 387, 390 (Minn. App. 2004). "[T]he government violates an individual's due-process rights when representatives of the state mislead individuals as to their legal obligations." *Whitten v. State*, 690 N.W.2d 561, 565 (Minn. App. 2005) (citing *Raley v. Ohio*, 360 U.S. 423, 439 (1959)). A person may avoid prosecution if, in acting criminally, that person relied on representations made by the state. *Id.* (citing *State v. White*, 464 N.W.2d 585, 590 (Minn. App. 1990), *rev. denied* (Minn. Mar. 15, 1991)). When a government representative provides advice or instructions that are a misstatement of the law, a person has the right to rely on these statements. *Id.* at 566. One function of due-process rights is to "prevent the government from informing a felon that all his civil rights are restored and then prosecuting him for an act that would have been legal if all his civil rights had been restored." *Id.* at 565 (citing *United States v. Erwin*, 902 F.2d 510, 512-13 (7th Cir. 1990)). However, it is not a violation of a person's due-process rights when the discharge order from probation "accurately informs a defendant of their legal obligations under the then-existing version of Minnesota Statutes section 624.713, subdivision 1(2), . . . and the Legislature later modifies those obligations by amending the statute." *Underwood v. State*, 25 N.W.3d 26, 29 (Minn. 2025).

Chouinard argues that his case is similar to that in *Whitten*, in which we reversed a defendant's conviction for unlawful firearm possession because prosecuting him violated his due-process rights. 690 N.W.2d at 566. In *Whitten*, the district court also discharged the defendant from probation with a form order. The form order stated that the defendant was "restored to *all* civil rights and to full citizenship"; however, the district court failed to place a check mark in the box next to the declaration, "You are not entitled to . . . possess or receive a firearm," even though the law at the time prohibited firearm possession based on the defendant's conviction. *Id.* at 562-63 (emphasis added). A few years later, police officers found a firearm in the defendant's car, and he pleaded guilty to unlawful possession of a firearm. *Id.* at 563. The defendant argued in a postconviction petition that the charge and conviction violated his due-process rights because the discharge order included a misstatement of the law. *Id.* This court agreed, determining that the failure to check the box indicating that he could not possess a firearm, preceded by a statement that all his civil rights had been restored, was the state effectively telling the defendant that he could possess a firearm. *Id.* at 565-66. Therefore, this court reversed the district court's entry of judgment of conviction as a violation of his due-process rights. *Id.* at 566.

The state, however, argues that the facts here are more similar to those in *State v. Grillo*. 661 N.W.2d 641 (Minn. App. 2003), *rev. denied* (Minn. Aug. 5, 2003). In *Grillo*, after the defendant was discharged from his sentence, the legislature amended the statute prohibiting people with certain convictions from possessing firearms, which resulted in the defendant being prohibited from possessing firearms. *Id.* at 643. At some point after the amendment went into effect, police officers conducted a traffic stop of the defendant and

6

discovered a firearm in his car, and the state charged the defendant with unlawful possession of the firearm. *Id.* After being convicted, the defendant appealed his conviction, arguing that his due-process rights had been violated because he did not receive notice that he was prohibited from possessing firearms. *Id.* at 645. This court concluded that "ignorance of the law is not a defense when it would have been possible, had [the defendant] made the effort to do so, to learn of the existence of the prohibition." *Id.*

We determine that the facts here are more like those in *Whitten* than those in *Grillo*. It is pivotal that the amendment of the law in Grillo occurred *after* the defendant was discharged but, here, the amendment occurred *before* Chouinard was discharged. At the time Chouinard was discharged from his sentence and received an order informing him that all of his civil rights had been restored but for the right to possess a firearm, the amendment was effective and Chouinard was also prohibited from possessing ammunition under the law. Thus, the order contained an inaccurate statement of the law at the time of his discharge and was misleading. Because the government's statement was incorrect and misleading and Chouinard was entitled to rely on it, *see Whitten*, 690 N.W.2d at 566, the state's prosecution of Chouinard and the conviction for the firearm-possession charge violated his due-process rights.[1]

---

[1] We observe that this conclusion is also consistent with the supreme court's recent opinion in *Underwood*, which provides:

> When a district court order accurately informs a defendant of their legal obligations under the then-existing version of Minnesota Statutes section 624.713, subdivision 1(2), . . . and the Legislature later modifies those obligations by amending the statute, the State does not violate a defendant's due process

Accordingly, we reverse the judgment of the district court and direct that Chouinard's conviction for possession of ammunition be vacated.

**Reversed.**

---

rights by later charging the defendant for a violation of the amended statute.
*Underwood*, 25 N.W.3d at 29.