STATE of Minnesota, Respondent,

v.

Dennis K. VAUGHN, Appellant.

No. C7-83-401.

Supreme Court of Minnesota.

Jan. 25, 1985.

C. Paul Jones, Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., St. Paul, for respondent.

TODD, Justice.

Defendant was found guilty by a district court jury on three counts of knowingly transferring stolen property having a value of $150 or more. *See* Minn.Stat. § 609.53, subd. 1(1) (1980). The prosecution arose out of defendant's sale of stolen property, on three different dates early in 1982, to undercover police officers posing as fences. The trial court sentenced defendant to concurrent prison terms of 25, 32 and 37 months. On appeal defendant contends (1) that his convictions should be reversed outright because the state (a) failed to prove that he committed the offenses and (b) failed to meet its burden of proof on the issue of entrapment; (2) that he should receive a new trial because the trial court (a) erred in denying a defense request for an omnibus hearing to determine the admissibility of secretly-recorded video tapes of the sales, (b) erred in denying a pretrial continuance requested by defendant so that he could be represented by a different attorney, (c) erred in admitting video taped summaries made by one of the officers after each transaction, and (d) erred in precluding defendant from calling two witnesses as a sanction for defendant's failure to abide by the discovery rules; and (3) that his sentences should be reduced because the trial court (a) erred in using the *Hernandez* method to compute defendant's criminal history score and (b) erred in re-fusing to give defendant credit for time spent in jail before trial in connection with a prior conviction for an unrelated offense. We affirm.

1. Defendant first contends that his convictions should be reversed outright because the state (a) failed to prove all the elements of the offense of transferring stolen property and (b) failed to meet its burden of proof on the defense of entrapment.

(a) Defendant argues (i) that all three convictions are based on insufficient evidence that the property transferred was stolen property and (ii) that one of the three convictions is based on insufficient evidence that the value of the property taken was over $150.

(i) Defendant's contention that the convictions are based on insufficient evidence that the property transferred was stolen property is premised on the requirement that the *corpus delicti* be established by evidence independent of the defendant's confession. That requirement, codified at Minn.Stat. § 634.03 (1982), provides that "A confession of the defendant shall not be sufficient to warrant his conviction without evidence that the offense charged has been committed". Recent cases dealing with the requirement include *State v. Fader*, 358 N.W.2d 42 (Minn.1984), *Matter of Welfare of M.D.S.*, 345 N.W.2d 723 (Minn.1984), and *State v. Lalli*, 338 N.W.2d 419 (Minn.1983). A confession is any statement by a person in which he explicitly or implicitly admits his guilt of a crime. *See State v. Smith*, 264 Minn. 307, 119 N.W.2d 838 (1962). Defendant's statements to the undercover officers that the property was stolen constitutes a confession even though defendant did not realize he was talking to the police. Therefore, the statutory requirement of corroboration applies. We conclude there was sufficient corroboration, that is, sufficient independent evidence from which the jury could infer that the statements were trustworthy and that therefore the property in question was stolen. The record includes evidence that the items defendant sold were new, that some still had store

tags and label attached, and that other items were still on hangers that ordinarily are not sold with the merchandise, but are kept by the store for reuse. The evidence also reveals that defendant sold the items in batches for considerably less than their retail market value. Finally, there was evidence to indicate that the goods were from the stores from which defendant said he stole them.

■ (ii) Defendant also argues that one of the convictions must be vacated because there was insufficient evidence that the value of the property transferred, namely, some jeans, was over $150. This contention is without merit. Defendant told the police that the jeans were selling at retail for $30 a pair or $300 for the ten pairs he sold. The state did not call any witness from the store from which the jeans apparently were taken, but did call a professional appraiser, who testified that he believed the jeans had a retail market value of $250. He testified that he had "no doubt" that their value was over $150.

■ (b) Defendant also argues that the state failed to meet its burden of proof on the defense of entrapment. Minnesota follows the so-called subjective test of entrapment. Under Minnesota's approach, the defendant must raise the defense by showing by a fair preponderance of the evidence—either through cross-examination of the state's witnesses or through defense testimony—that the government induced the commission of the crime. Once the defendant has raised the issue by showing inducement, to obtain a conviction the state must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See State v. Ford,* 276 N.W.2d 178 (Minn.1979); *State v. Grilli,* 304 Minn. 80, 230 N.W.2d 445 (1975). In *State v. Olkon,* 299 N.W.2d 89 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), we said that in order to show inducement, the defendant must show "something in the nature of persuasion, badgering, or pressure by the state," *id.* at 107, and that the prosecutor may prove predisposition "by evidence that the accused readily responded to the solicitation of a crime by the state." *Id.* at 108.

■ Defendant did not make a sufficient showing of inducement. The undercover officers merely provided defendant with an opportunity to commit the crimes. They did not pressure or otherwise induce him to commit them. Further, the evidence establishes that defendant was predisposed to commit the crimes, that he was in the business of stealing property and selling it to fences, and that if the officers had not been in the fencing business he would have gone elsewhere. *See State v. Olkon,* 299 N.W.2d 89 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

2. Defendant bases his request for a new trial on a number of arguments.

■ (a) First, he contends that the trial court erred in denying his request for an omnibus hearing to determine the admissibility of the secretly-recorded video tapes of the sales. In *State v. Dick,* 253 N.W.2d 277 (Minn.1977), the defendant, convicted of selling marijuana to undercover officers, argued on appeal that the trial court improperly admitted statements defendant made to the undercover officers during the transaction. We said, "Defendant's contention that a Rasmussen hearing was required before the statements were admitted has no merit because it was clear that the statements were not the type of statements covered by the constitutional exclusionary rule relating to illegally obtained evidence." *Id.* at 279. The same is true here. Defendant had no protected privacy interest in the statements he was making to the officers. *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (a person has no reasonable expectation of privacy in what he knowingly exposes in public place). Defendant's statements clearly were admissible under Minn.Stat. § 626A.02, subd. 2(c) (1982) and prior case law. *See State v. Olkon,* 299 N.W.2d 89 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981); *State v. Bellfield,* 275

N.W.2d 577 (Minn.1978) (both upholding admission of secretly-recorded tapes of conversations where one party consented to the taping).

(b) Defendant next argues that the trial court erred in denying a pretrial continuance requested by defendant so that he could be represented by a different attorney. This contention is without merit. *See State v. Lugo-Diaz*, 348 N.W.2d 79 (Minn. 1984).

(c) Defendant also argues that the trial court erred in admitting the videotaped summaries that were made by one of the officers after each transaction. We agree with defendant that there may be cases where admission of such summaries clearly would be improper, particularly if parts of the tape of the transaction were unclear and the officer was not present in court to be cross-examined. We need not decide, however, whether it was error to admit the summaries in this case because it is clear that any error that might have been committed in admitting them was nonprejudicial.

(d) Finally, defendant argues that the trial court erred in precluding him from calling two witnesses as a sanction for defendant's failure to abide by the discovery rules. Defense counsel told the prosecutor before trial that he would not be calling any witnesses. He said the same thing during the jury selection and in his opening statement. Then, near the conclusion of the state's case in chief, he said that he wanted to call employees from two of the stores from which the goods were stolen as "rebuttal" witnesses to counter the state's evidence by showing that the items in question were sometimes sold for as much as 25% off the marked retail price. After listening to the defense's offer of proof, which was vague since defense counsel had not spoken with any of these witnesses, the trial court precluded defense counsel from calling them. The trial court concluded that this sanction was justified because defense counsel had not complied with the discovery rules and because it was

not clear that the evidence would help defendant significantly.

The leading case on the issue of sanctions for failing to comply with the discovery rules is *State v. Lindsey*, 284 N.W.2d 368 (Minn.1979). In *Lindsey*, we observed that:

The imposition of sanctions for violations of discovery rules and orders is a matter particularly suited to the judgment and discretion of the trial court. [Citations omitted]. Indeed, the trial court is in the best position to determine whether any harm has resulted from the particular violation and the extent to which this harm can be eliminated or otherwise alleviated. [Citation omitted]. Accordingly, we will not overturn its ruling absent a clear abuse of discretion. [Citations omitted]. In exercising this discretion the trial judge should take into account: (1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors. [Citations omitted]. Analyzed in light of these considerations, the district court's preclusion order was not an abuse of discretion.

Prior to trial the defense disclosed the names of only two of the eight witnesses it ultimately attempted to call at trial. While this may not have been motivated by bad faith, neither can it be discerned from the record that there was justification for such disregard of the discovery obligation. Defense counsel cannot now justify his lack of disclosure by claiming that the decision to call these nondisclosed witnesses was not formally made until after the state had rested. Such an interpretation of the discovery obligation would render Rule 9.02, subd. 1(3), meaningless; in every case counsel could claim that the final decision to call any given witness was made only after the state had presented its evidence. As emphasized by the trial court, the defense had possession of a transcript at the grand jury proceedings for 3 or 4 weeks

prior to trial, certainly adequate time in which to prepare the case.

Moreover, the state was, of course, prejudiced by this failure to make disclosure. * * * And, finally, we recognize that the trial court had no other meaningful sanctions at its disposal; it was too far into trial to consider a continuance, and Rule 9.03, subd. 8, expressly limits the court's contempt power to willful violations of the rules.

Preclusion of evidence is a severe sanction which should not be lightly invoked. [Citations omitted]. Here, however, preclusion was warranted and consequently we hold that the trial court did not abuse its discretion. The values sought to be achieved through a reciprocal discovery will be attained only if the rules are properly observed, and to this end the trial courts must have the ability to make those obligations meaningful.

*Id.* at 373–74.

■ We hold that *Lindsey* controls. There was no excuse for defense counsel's delay in locating witnesses to testify on the issue of value and in giving the prosecutor notice of their anticipated testimony. Defense counsel labeled their anticipated testimony as "rebuttal" evidence in an attempt to excuse his failure to disclose, but the trial court correctly recognized that the anticipated testimony was evidence a defendant normally would produce in his case in chief. It appears likely that the trial court would have admitted the evidence if defense counsel had made an offer of proof establishing that the anticipated testimony might lead to acquittal. The proposed testimony, however, would simply have shown that the items in question were sometimes placed on sale for as much as 25% off the normal retail price. There was no evidence to show that these items were on sale when taken or that their retail market value would have been below $150 if they had been on sale. Preclusion should be used only as a last resort and then only if preclusion will not prejudice the defendant. Here, the defendant was not prejudiced.

■

3. Finally, defendant contends that his sentence duration should be reduced because the trial court (a) erred in using the *Hernandez* method to compute his criminal history score and (b) erred in refusing to give defendant credit for probationary time spent in jail in connection with a prior conviction for an unrelated offense.

(a) The use of the *Hernandez* method in computing defendant's criminal history score was proper. *See State v. Wallner,* 346 N.W.2d 349 (Minn.1984); *State v. Moore,* 340 N.W.2d 671 (Minn.1983).

 (b) The trial court also properly refused to give defendant credit for the probationary jail time he served in connection with a prior conviction for an unrelated offense, because the jail time was not served "in connection with" the charged offense. *See State v. Patricelli,* 357 N.W.2d 89 (Minn.1984); *State v. Brown,* 348 N.W.2d 743 (Minn.1984); *State v. Lindsey,* 314 N.W.2d 823 (Minn.1982).

Affirmed.