*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1050**

State of Minnesota,
Respondent,

vs.

Ricky Marcel Roberson,
Appellant.

**Filed July 27, 2015
Affirmed
Peterson, Judge**

Olmsted County District Court
File No. 55-CR-13-1235

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from convictions of second- and third-degree controlled-substance crime, appellant argues that the evidence was insufficient to prove that he was predisposed to sell drugs to a police informant. We affirm.

## FACTS

Appellant Ricky Marcel Roberson was charged with second- and third-degree controlled-substance crime (sale) after he sold cocaine to police informant W.R. during controlled buys on November 7 and December 5, 2012. Appellant had never previously been charged with a controlled-substance sale crime. Appellant raised an entrapment defense, waived his right to a jury trial on the defense, and presented the defense to the district court for decision.

At the hearing on the defense, appellant testified that he had known W.R. for more than four years and that they had had an on-again-off-again sexual relationship. Appellant denied ever selling or providing drugs to anyone other than W.R. But he admitted that he and W.R. had used cocaine together.

On cross examination and re-cross examination, appellant testified:

> Q. What'd you mean when you said that you were going to give her some of our product?
> A. The stuff we smoked and shared with each other before we had intercourse, if we had intercourse for that night. That's what I mean –
> Q. So our is you and her?
> A. Yeah. Like I buy it and it's ours. We're sharing it. We're using it.

Q. So if it was already hers, why is she paying you back for it?

A. Because I had bought it so we can enjoy a good night together, that's why it was ours and that's what I meant when I said that.

. . .

Q. So what does our product mean to you?  Just something that you were going to share with [W.R.]?

A. Yeah.

Q. That supposedly was hers also.

A. It wasn't hers to go and do whatever she was asking me she could go do with it, it was for me and her to enjoy a good night together.  It was ours –

Q. But if you're paying 90 –

A. – because I'm sharing.

Q. If you're paying 90 to a hundred bucks a gram for this stuff and she's saying, hey, I can get like 50 bucks or more on a $20 amount, that's a money making venture for you; right?

A. No, because I was okay anyway. I didn't think like that. I didn't really care for that, I was just trying to get some pussy. Excuse my language.

. . .

Q. And when I asked you what you meant by our product, that's what you were talking about; is that right?

A. Yes.  Stuff I'd get that we'd share.

Q. Right.  You got it. You bought it.  She didn't – It wasn't hers, but you shared with her; right?

A. Um hmm.

Q. Is that a yes?

A. Yes.

. . .

Q. And that was what you called our product, which was really yours.

A. I use our product to indicate that I was sharing it with her and it was ours because I didn't mind sharing it with her. So she – I wasn't telling her she couldn't smoke this or couldn't smoke that. It was like we was just back and forth, so it was ours to share.

Appellant testified that sometime before the November 7 controlled buy, W.R. told him that she needed money to avoid eviction and asked for his help.  W.R., who had

3

two young children, showed appellant an eviction notice and said that she would be evicted in one or two weeks. When appellant told W.R. that he could not afford to lend her money, W.R. asked appellant to get her crack cocaine and said that she had an available buyer and could make the money needed to pay her bills by selling the cocaine to the buyer. Appellant initially refused, but during the next three or four days, W.R. repeatedly asked him to get her cocaine.

The district court found that appellant's testimony about W.R. playing on his sympathies by claiming that she was under financial pressure and facing imminent eviction and that she could make a substantial profit by reselling the cocaine was plausible and unrebutted. Based on this testimony, the district court assumed for purposes of analysis that appellant proved by a fair preponderance of the evidence that the government induced the sale crimes. But, based on the statutory definition of "sell" and appellant's testimony that he had provided W.R. with cocaine free of charge on numerous prior occasions, the district court found that the state proved beyond a reasonable doubt that appellant was predisposed to commit the sale crime and, therefore, appellant's entrapment defense failed.

A jury found appellant guilty as charged. The district court sentenced him to an executed prison term. This appeal followed.

## DECISION

Citing *State v. Grilli*, 304 Minn. 85, 95, 230 N.W.2d 445, 455 (1975), appellant argues that when an entrapment defense is presented to the court rather than to the jury, the issue is one of law, and review is de novo. In *Grilli*, the supreme court held that

4

> following complaint or indictment and at a time prior to the commencement of trial, a defendant shall elect whether to have his claim of entrapment presented in the traditional manner as a defense to the jury or to have it heard and decided by the court *as a matter of law*.

*Id*. (emphasis added).

The emphasized language in this quotation from *Grilli* suggests that an entrapment defense is an issue of law, which we would review de novo. But the supreme court later clarified its statement in *Grilli* as follows:

> Some confusion has arisen by the use of the same term, "entrapment as a matter of law," to refer to different things. In the *Grilli* case we used the term to refer to the situation in which the defendant waives his right to have entrapment decided by the jury and elects to have the [district] court decide it as trier of fact. Secondly, some cases use the phrase to refer to what, for the sake of clarity, should be termed the due-process defense. Thirdly, the phrase could be used to refer to those rare situations in which, although the defendant did not elect to have the [district] court decide entrapment as trier of fact, the evidence which has come out at trial is such that the court is required to take the case from the jury and rule that there was entrapment as a matter of law. For clarity's sake, in the future we will use the phrase only when referring to this last situation.

*State v. Ford*, 276 N.W.2d 178, 183 (Minn. 1979).

Appellant is in the same situation as the defendant in *Grilli*; he waived his right to have his entrapment defense decided by the jury and elected to have the district court decide it as trier of fact. He now argues on appeal that the evidence was insufficient to prove that he was predisposed to sell drugs to W.R.

When considering a claim of insufficient evidence, this court applies the same standard of review to a bench trial as to a jury trial. *State v. Hough*, 585 N.W.2d 393,

396 (Minn. 1998). Under that standard, this court conducts "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach [its] verdict." *State v. Caine,* 746 N.W.2d 339, 356 (Minn. 2008) (quotation omitted). We will not disturb the verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the crime charged. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn. 2004). Inconsistencies in testimony go to witness credibility, which is an issue for the fact-finder, not this court. *State v. Pendleton*, 706 N.W.2d 500, 512 (Minn. 2005).

To raise an entrapment defense, a defendant must show "by a fair preponderance of the evidence . . . that the government induced the commission of the crime." *State v. Vaughn,* 361 N.W.2d 54, 57 (Minn. 1985). To establish inducement, "the evidence must show that the state did something more than merely solicit the commission of a crime." *State v. Olkon,* 299 N.W.2d 89, 107 (Minn. 1980) (affirming district court's dismissal of entrapment defense when "state merely provided defendant with the opportunity to commit the crime"). "[S]omething in the nature of persuasion, badgering, or pressure by the state must occur before the inducement element is satisfied." *Id.* Appellant's testimony that W.R. played on his sympathies is sufficient to support the district court's assumption that appellant proved by a fair preponderance of the evidence that the government induced the drug sales.

Once a defendant has raised the issue of entrapment by showing inducement, the burden shifts to the state to "prove beyond a reasonable doubt that the defendant was

6

predisposed to commit the offense." *Vaughn,* 361 N.W.2d at 57. Predisposition may be shown "by evidence of (a) defendant's active solicitation to commit the crime, (b) prior criminal convictions, (c) prior criminal activity not resulting in conviction (as here), or (d) defendant's criminal reputation, or by any other adequate means." *Olkon*, 299 N.W.2d at 107-08.

Appellant was charged with violating Minn. Stat. § 152.022, subd. 1(1) (2012), and Minn. Stat. § 152.023, subd. 1(1) (2012). Both of these statutes make it a crime to unlawfully sell a controlled substance. "Sell" is defined as "to sell, *give away*, barter, deliver, exchange, distribute or dispose of to another." Minn. Stat. § 152.01, subd. 15a (2012) (emphasis added). Because the statutory definition of "sell" includes "give away," the district court found that appellant's conduct of providing cocaine to W.R. free of charge on numerous occasions was "legally identical to the current allegations that he gave her cocaine for money" and proved beyond a reasonable doubt that appellant was predisposed to provide W.R. cocaine when she asked him to do so.

Appellant argues that the district court "erred in holding that predisposition to commit the charged crime may be established beyond a reasonable doubt by evidence that the defendant committed a fundamentally different crime." Citing *State v. Carithers*, 490 N.W.2d 620 (Minn. 1992), appellant contends that the district court erred by finding that when appellant gave cocaine to W.R., there was a sale under the statutory definition.

In *Carithers*, the supreme court answered the certified question whether, "[w]hen a married couple jointly acquires a Schedule I controlled substance, and one of the partners uses that substance and subsequently dies from a drug overdose, did the

7

legislature intend that the surviving partner be subject to prosecution under Minn. Stat. § 609.195(b)?"[1]  *Id.* at 620.  The facts of the two cases involved in *Carithers* were as follows:

> (a) A friend gave defendant Gladwin and his wife a ride to the place of purchase. Gladwin bought two "papers" of heroin, while his wife and the friend waited in the car.  They took the heroin to the Gladwin home.  Gladwin prepared the syringes, keeping one for himself and giving one to his wife. Gladwin "shot up" himself, and his wife "shot up" at the same time.  She passed out and died of a drug overdose.

> (b) Defendant Carithers went by herself to buy the heroin, but it appears undisputed that she was buying not just for herself but for her husband also.  She brought the heroin home and used her half.  After showing her husband where she hid the heroin, she left the house.  During her absence, her husband prepared a syringe and injected himself.  He too died of an overdose.

*Id.* at 621.

The supreme court answered the certified question in the negative.  *Id.* at 622.  The court explained:

> If a husband and wife jointly acquire the drug, each spouse has constructive possession from the moment of acquisition, whether or not both are physically present at the transaction.   The absent spouse could be charged with

---

[1] Minn. Stat. § 609.195(b) (2014), which has not been amended since *Carithers* was decided, provides:
> Whoever, without intent to cause death, proximately causes the death of a human being by, directly or indirectly, unlawfully selling, giving away, bartering, delivering, exchanging, distributing, or administering a controlled substance classified in Schedule I or II, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years or to payment of a fine of not more than $40,000, or both.

constructive possession at any time following the purchase by his or her confederate. That the absent spouse did not exercise physical control over the substance at the moment of acquisition is an irrelevancy when there is no question that the absent spouse was then *entitled* to exercise joint physical possession.

*Id.* (emphasis in original).

Appellant argues that there was no sale when he gave cocaine to W.R. before the controlled buys because, like the married couples in *Carithers*, "he and W.R. jointly acquired drugs with the intention of sharing drugs together." But appellant testified that the cocaine that he previously gave to W.R. "wasn't hers to go and do whatever she was asking me she could go do with it, it was for me and her to enjoy a good night together. It was ours because I'm sharing."

The supreme court emphasized in *Carithers* that it was "not dealing with a case of 'sharing' of one's individually acquired drugs with another person." *Id.* at 624. "Rather," the court stated, "we are dealing with joint acquisition and possession of drugs under circumstances where neither defendant's conduct can be fairly characterized as involving a sale or transfer or delivery to the person who died." *Id*. at 624. And the court noted that

[i]n a typical prosecution under section 609.195(b) on facts similar to those in this case, the state may be able to obtain a conviction by proving that the heroin was not jointly acquired, that is, that the defendant acquired the heroin individually, then "sold" it to the deceased. But in the instant case we must assume, given the phrasing of the certified question and the apparently undisputed facts, that each of the defendants acquired the heroin jointly with his or her spouse.

*Id*. at 623.

9

Viewing the evidence in the light most favorable to the conviction, as we must, appellant's testimony demonstrated that, unlike the married couples in *Carithers*, he and W.R. did not jointly acquire cocaine before the controlled buys. Appellant explicitly stated that the cocaine was not W.R.'s to do whatever she wanted to do with it, which means that W.R. was not entitled to exercise joint physical possession of the cocaine from the moment of acquisition; she could only use the cocaine because appellant gave her some to use.

Appellant characterizes giving cocaine to W.R. for free and giving cocaine to W.R. in exchange for money as two fundamentally different crimes. But because the legislature has defined "sale" to include both giving away and selling, Minn. Stat. § 152.022, subd. 1(1), and Minn. Stat. § 152.023, subd. 1(1), can both be violated by either giving away cocaine or by selling cocaine. Consequently, when appellant gave cocaine to W.R., he did not commit a fundamentally different crime than when he sold cocaine to W.R.; he committed the same crime in a different way. Appellant acquired cocaine individually, then gave cocaine to W.R.

Giving W.R. cocaine was prior criminal activity by appellant that did not result in a conviction. And the evidence of this criminal activity, which constituted a "sale" of a controlled substance, was sufficient to prove beyond a reasonable doubt that appellant was predisposed to unlawfully "sell" a controlled substance.

**Affirmed**.

10