*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1713**

State of Minnesota,
Respondent,

vs.

Abdisaid Ahmed Mohamed,
Appellant.

**Filed August 17, 2015
Affirmed
Willis, Judge**[*]

Hennepin County District Court
File No. 27-CR-14-5297

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)


        Considered and decided by Hudson, Presiding Judge; Worke, Judge; and Willis,

Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WILLIS**, Judge

Appellant Abdisaid Ahmed Mohamed challenges his conviction of prohibited person in possession of a firearm, arguing that the district court abused its discretion by refusing to instruct the jury on the defense of entrapment. We affirm.

**FACTS**

In December 2013, Minneapolis Police Officer Adam Lapinski learned that Mohamed wanted to purchase a firearm, determined that Mohamed was prohibited from possessing a firearm, and enlisted Minneapolis Police Officer Ricardo Muro to go undercover to investigate.

Officer Muro first contacted Mohamed on December 10, 2013. Officer Muro asked Mohamed if he was still interested in purchasing a handgun, and Mohamed responded that he was looking to buy more than one. Officer Muro stated that he had a 9-millimeter handgun available for $300, and Mohamed agreed to buy it at that price. Mohamed and Officer Muro later exchanged other phone calls regarding Mohamed's request to pay part of the purchase price in cash and part in prescription pills.

On December 18, Officer Muro missed a call from Mohamed and called him back. The men agreed that Mohamed would pay half in cash and half in prescription pills and arranged to meet at a specific time on December 19. But after several text messages between the men on December 19, this meeting did not take place. According to Officer Lapinski, Mohamed "did not have the currency to complete the transaction" on December 19.

2

Around Christmas, Mohamed sent several texts and made several phone calls to Officer Muro, who did not respond because he and Officer Lapinski wanted to wait until a full team of officers was back from vacation to assist in the case. Officer Muro called Mohamed on January 6 in response to a text from Mohamed. Mohamed stated that he now had the money to buy a handgun, and Officer Muro promised to call Mohamed back once he had secured a new handgun to sell.

On January 7, Officer Muro again called Mohamed after missing a call from him. Mohamed agreed to pay $325 in cash for the handgun and arranged to meet Officer Muro the next day. Officer Muro told Mohamed that if he did not show up this time, he should not call him again.

On January 8, Officer Muro and Mohamed exchanged five phone calls and several text messages regarding where and when they should meet. During one call, Mohamed stated that he would be driving a Dodge Magnum. Several officers were parked in the appointed shopping-center parking lot when Mohamed arrived in a Dodge Magnum. Officer Muro had a Glock 9-millimeter handgun in a locked tool box in his SUV. Mohamed approached the SUV and spoke to Officer Muro near the SUV's open tailgate. Officer Muro opened the tool box and showed the handgun to Mohamed. He then gave Mohamed the locked tool box and Mohamed gave him $300, which was what he claimed was all that he had been able to withdraw from an ATM. Officer Muro saw Mohamed place the toolbox in the trunk of his Dodge Magnum, close the trunk, and get into the driver's seat. He then repeated "execute" several times, which was the "take-down

3

signal." Other officers arrested Mohamed, and Officer Lapinski confirmed that the tool box with the handgun was in Mohamed's vehicle.

The state charged Mohamed with being a prohibited person in possession of a firearm. Before trial, Mohamed provided notice of his intent to introduce an entrapment defense. After hearing arguments from both sides, the district court stated:

> But the initial question for me is, is there enough evidence to show basically that the government induced the commission of a crime? In order to prove that[,] you've got to show that there was something in the nature of persuasion, badgering or pressuring the defendant in this case to buy a gun. Again, I'll make a preliminary ruling because I haven't heard any of the evidence, but I've read the memorandum and I've heard the discussions that we've had in chambers. And based on what I know about this case so far, I don't think the defense can make the requisite showing of badgering, persuasion or pressure. It's not enough to show that . . . somebody called the defendant or got in touch with the defendant and said[,] I hear you're interested in a gun. That does not do it.

The district court denied Mohamed's motion for an entrapment instruction "preliminarily" and stated that it would "revisit" the issue after hearing the testimony. The district court also stated that Mohamed could "still put in the theory that . . . he felt pressured or whatever" through his testimony or other evidence.

Although his attorney mentioned police "manipulation" several times in her opening and closing statements, Mohamed did not request an entrapment instruction following the state's case, did not present a defense, and did not object to the district court's jury instructions. The jury found Mohamed guilty of prohibited firearm possession. This appeal follows.

# DECISION

"We review a [district] court's refusal to issue a requested instruction for abuse of discretion, focusing on whether the refusal resulted in error." *State v. Torres*, 632 N.W.2d 609, 616 (Minn. 2001). "[A] party is entitled to an instruction on his theory of the case if there is evidence to support it." *Id.* (quotation omitted). But the party claiming error bears the burden to show both error and resulting prejudice. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

A defendant cannot be convicted when law enforcement "lured [him] into committing an offense which he otherwise would not have committed and had no intention of committing." *State v. Grilli*, 304 Minn. 80, 88, 230 N.W.2d 445, 451 (1975). To raise an entrapment defense, the defendant must show "by a fair preponderance of the evidence—either through cross-examination of the state's witnesses or through defense testimony—that the government induced the commission of the crime." *State v. Vaughn*, 361 N.W.2d 54, 57 (Minn. 1985). Regarding inducement, "the evidence must show that the state did something more than merely solicit the commission of a crime." *State v. Olkon*, 299 N.W.2d 89, 107 (Minn. 1980), *cert. denied*, 101 S. Ct. 954 (1981). The state must persuade, badger, or pressure the defendant to commit the offense. *Id.* Once the defendant has shown inducement by a preponderance of the evidence, "the state must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Vaughn*, 361 N.W.2d at 57.

Here, the district court determined that Mohamed had not met his burden to show inducement by a preponderance of the evidence because he had not shown "badgering,

5

persuasion or pressure." Mohamed argues that this determination was erroneous because the district court failed to view the evidence in the light most favorable to him. *See State v. Dahlin*, 695 N.W.2d 588, 598 (Minn. 2005) (requiring a district court to view the evidence in the light most favorable to the party requesting a lesser-included-offense instruction). Even if *Dahlin* applies to Mohamed's requested entrapment instruction, the district court properly considered the evidence in light of Mohamed's burden to establish inducement "by a fair preponderance of the evidence." *See Vaughn*, 361 N.W.2d at 57.

Mohamed also argues that he "presented sufficient evidence" of police inducement. We disagree. Mohamed is correct that Officer Muro first contacted him and asked if he was interested in buying a handgun. But Mohamed immediately responded that he was interested in buying more than one handgun and made this assertion several times throughout his conversations with Officer Muro. Officer Muro "merely provided [Mohamed] with an opportunity to commit the crime[]," *see id.*, and Mohamed "readily responded to the solicitation," *see Olkon*, 299 N.W.2d at 108. In addition, Mohamed is incorrect that Officer Muro continued to initiate communications with Mohamed until Mohamed arrived in the parking lot on January 8. Although many of the phone calls introduced at trial were initiated by Officer Muro, several of them were placed in response to missed calls and text messages from Mohamed. The phone calls and text messages focus on finalizing a handgun sale and reveal no evidence of improper "persuasion, badgering, or pressure." *See id.* at 107.

Because Mohamed did not show inducement by a preponderance of the evidence, particularly because he requested the entrapment instruction only before trial and did not

6

present any testimony about inducement, the district court did not abuse its discretion by denying Mohamed's requested instruction. *See Vaughn*, 361 N.W.2d at 57 (stating that a defendant must show "by a fair preponderance of the evidence—either through cross-examination of the state's witnesses or through defense testimony—that the government induced the commission of the crime"). We therefore need not consider whether Mohamed was predisposed to commit the charged offense. *See id.*

**Affirmed.**