*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0053**

State of Minnesota,
Respondent,

vs.

Bret Emery Vansickel,
Appellant.

**Filed October 24, 2016
Affirmed in part and remanded
Hooten, Judge**

Aitkin County District Court
File No. 01-CR-15-262

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Jim Ratz, Aitkin County Attorney, Aitkin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender (for appellant)

Considered and decided by Bratvold, Presiding Judge; Peterson, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

Appellant challenges his conviction of first-degree driving while impaired (DWI), arguing that the evidence is insufficient and that the district court improperly entered

convictions on two counts that arose from a single act. We affirm appellant's conviction and remand for correction of the warrant of commitment.

## FACTS

On the evening of March 8, 2015, C.L., who was ill and in bed, heard a snowmobile approach her residence. Appellant Bret Emery Vansickel argued with C.L. about her son. Although their conversation lasted at least 20 minutes, C.L. never saw Vansickel because he remained outside and they spoke through two different doors of her residence. C.L. did not hear or see anyone else outside with Vansickel. At 9:23 p.m., after Vansickel refused to leave at her request, C.L. telephoned 911 to report that Vansickel was on her property and refused to leave. Near the end of her conversation with law enforcement, C.L. stated that she thought that Vansickel had just left her residence, possibly on a snowmobile.

At approximately 9:25 p.m., upon receiving information regarding C.L.'s call, Aitkin County Deputy Sheriff Gregory Payment began heading toward Vansickel's residence, which was known to Deputy Payment. Approximately seven minutes later, while en route to Vansickel's residence, Deputy Payment came across a fresh set of snowmobile tracks and noticed a strong odor of snowmobile exhaust. Deputy Payment followed the tracks, which led to Vansickel's residence, and, upon driving past the residence, noted that the tracks did not extend past the residence. After turning around, Deputy Payment approached Vansickel's residence and did not see any cars or persons on foot leaving the residence. When Deputy Payment approached, Vansickel was standing outside his residence, approximately 15 to 20 feet away from a snowmobile, and was wearing snow pants, a heavy winter jacket, and a scarf. Deputy Payment noticed that

2

Vansickel's eyes were watery and bloodshot, his speech was slurred, he was uneasy on his feet, his speech was rambling and inconsistent, and he was emitting a very strong odor of alcohol. Based on these indicia, Deputy Payment believed that Vansickel was impaired by alcohol.

Vansickel refused to submit to standardized field sobriety testing or a preliminary breath test, but admitted that he had been at C.L.'s residence and that he was drunk. Deputy Payment then placed Vansickel under arrest for DWI. After placing Vansickel in the squad car, Deputy Payment walked over to the snowmobile and noticed that water was dripping off the track of the snowmobile and that the engine exhaust was very warm. Vansickel was transported to the county jail and was read the implied consent advisory. Video of the booking process at the jail and the reading of the implied consent advisory was recorded. During the booking process at the jail, Vansickel stated, "And I'm going to lie to the judge, tell him I wasn't driving. I'm going to lie. I have to lie or I'm going to f--king prison, you know what I mean?" During the reading of the implied consent advisory, Vansickel said "I'm going to say I didn't drive the f--king snowmobile . . . I'm going to lie and say I didn't." Vansickel agreed to take a breath test, which reported an alcohol concentration of 0.21.

Vansickel was charged by complaint with two counts of first-degree DWI, for operating a snowmobile under the influence of alcohol and for operating a snowmobile while having an alcohol concentration over .08. Following a jury trial, Vansickel was found guilty of both counts. The district court sentenced Vansickel to 36 months but stayed execution of the sentence. This appeal followed.

3

**D E C I S I O N**

**I.**

Vansickel argues that the evidence was insufficient to support his conviction. Vansickel does not dispute that there was sufficient evidence that he was intoxicated upon his arrest, but argues that the evidence was insufficient to prove that he operated or was in physical control of a snowmobile when he was under the influence of alcohol.

We must first determine the applicable standard of review. Ordinarily, when reviewing a claim of insufficient evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We assume that the jury disbelieved any evidence conflicting with the verdict. *Id.* Appellate courts "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.*

If, however, circumstantial evidence is necessary to support a conviction, we apply a heightened standard of review. *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015). In determining whether to apply the traditional standard of review or the heightened circumstantial evidence standard of review, we ask whether the state presented direct evidence sufficient to support the defendant's conviction. "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption," while circumstantial evidence is "evidence based on inference

4

and not on personal knowledge or observation." *Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (alterations omitted) (quotations and citation omitted).

Vansickel argues that this court should use the circumstantial evidence standard of review, while the state argues that the traditional standard of review applies because it presented sufficient direct evidence to sustain Vansickel's conviction. Vansickel's statements that he was going to lie and say that he did not drive the snowmobile constitute an admission that he was driving the snowmobile. "A confession is any statement by a person in which he explicitly or implicitly admits his guilt of a crime." *State v. Vaughn*, 361 N.W.2d 54, 56 (Minn. 1985). A confession is direct evidence of guilt. *State v. Weber*, 272 Minn. 243, 254, 137 N.W.2d 527, 535 (1965); *State v. Battin*, 474 N.W.2d 427, 430 (Minn. App. 1991), *review denied* (Minn. Oct. 23, 1991). Therefore, a confession may be sufficient to sustain a defendant's conviction if the defendant admits to conduct that satisfies each element of the charged offense.

Because the state presented direct evidence that Vansickel operated a snowmobile while impaired, we begin our analysis by applying the traditional standard of review to the state's direct evidence. The direct evidence presented by the state regarding whether Vansickel drove the snowmobile consists of his statements that he was going to lie and say that he was not driving the snowmobile. In light of Vansickel's admissions, and the fact that he does not challenge the sufficiency of the state's evidence on the other elements, the state's direct evidence is sufficient to support his conviction.

Moreover, Vansickel's admissions are corroborated by the following circumstantial evidence. C.L. heard a snowmobile approach her residence and spoke with Vansickel for

5

at least 20 minutes. C.L. did not hear anyone else outside with Vansickel. C.L. called law enforcement when Vansickel would not leave her residence. Law enforcement responded within minutes and were subsequently updated that Vansickel had left C.L.'s residence, possibly on a snowmobile. En route to Vansickel's residence, Deputy Payment observed a fresh set of snowmobile tracks and a strong odor of snowmobile exhaust. The tracks led to Vansickel's residence and did not extend past Vansickel's residence. Deputy Payment did not notice any cars or persons on foot coming to or leaving from Vansickel's residence. When Deputy Payment approached the residence, Vansickel was standing outside, approximately 15 to 20 feet away from a snowmobile and wearing snow pants and a heavy winter jacket. After putting Vansickel under arrest for DWI, Deputy Payment noticed that water was dripping off the track of the snowmobile and that the engine exhaust was very warm. We conclude that the evidence was sufficient to support Vansickel's conviction.

**II.**

Vansickel argues that the district court improperly entered convictions on both counts of first-degree DWI because both of the charges arose from the same act. Minn. Stat. § 609.04, subd. 2 (2014) provides that "[a] conviction or acquittal of a crime is a bar to further prosecution of any included offense, or other degree of the same crime." The statute "bars multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985).

The warrant of commitment indicates that the district court entered judgment of conviction on both counts and that Vansickel was sentenced on count two. The register of

6

actions also indicates that Vansickel was convicted of both counts. And, we agree with Vansickel that both charges arose from a single act, namely, his operation of a snowmobile while under the influence of alcohol. However, at the sentencing hearing, the district court, acknowledging that Vansickel was there "for sentencing on a count one, DWI first[-]degree charge," adjudicated and sentenced Vansickel only on that count. This court held in *State v. Staloch*, 643 N.W.2d 329, 329 (Minn. App. 2002), that "[w]hen an orally pronounced sentence varies from a written sentencing order, the orally pronounced sentence controls." Therefore, despite the clerical mistakes in the warrant of commitment, the district court only entered judgment of conviction on one of the two guilty verdicts.

However, we remand to the district court to correct the clerical error in the warrant of commitment. Although the district court only convicted Vansickel of one count of DWI, the warrant of commitment states that Vansickel was convicted of both counts. The Minnesota Supreme Court has instructed district courts to include only the offense of which the defendant is being adjudicated guilty in the judgment of conviction order. *State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999). We direct the district court to

correct the warrant of commitment to reflect that Vansickel was only convicted and sentenced on count one.

**Affirmed in part and remanded.**